Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN E. SADOWSKI,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant*. | Civil No.: 18-13672 (ES)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.    Introduction**

Before the Court is plaintiff Steven E. Sadowski's appeal of the decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq*. (*See* D.E. No. 1.)  The Court has subject-matter jurisdiction under 42 U.S.C. §§ 1383(c)(3) and 405(g) and decides this matter without oral argument, *see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons discussed below, the Court vacates and remands the decision of the Commissioner.

**II.   Factual and Procedural Background**

On September 16, 2014, Sadowski filed an application for DIB, alleging he is unable to work due to disabling conditions he sustained on June 15, 2013, as a result of

a combination of an attempt to lift a refrigerator while moving apartments and a subsequent rollerblading incident in which he fell on his coccyx bone. (D.E. No. 5, Administrative Record ("R.") at 44 & 184.) His alleged disabling conditions are cervical deterioration disc disease (C2-C3) and lumbar cervical deterioration disc disease (L4-L5). (*Id.* at 232.) He claims that his back and neck injuries, in combination with his obesity, anxiety, depression, and addiction to opioid medication, render him unable to work. (Pl. Mov. Br. at 25–26.) The application was denied initially and on reconsideration. (R. at 76–101.) A hearing was held before the Administrative Law Judge ("ALJ"), at which Sadowski and vocational expert Jackie Wilson testified. (*Id.* at 34–75.) On May 26, 2017, the ALJ denied Sadowski DIB. (*Id.* at 12–33.) The ALJ ruled that, although Sadowski suffers from a severe impairment that prevents him from returning to his past relevant employment, he has the residual functional capacity ("RFC") to perform sedentary work for which there exists a significant number of jobs in the national economy. (*Id.* at 17–28.) On July 28, 2018, the Appeals Council denied Sadowski's request for review. (*Id.* at 1–6.) Sadowski then filed the instant appeal. (*See* D.E. No. 1.)

### III. Legal Standards

#### A. Standard Governing Benefits

To receive DIB, a claimant must show that he is "disabled" within the Act's definition. 42 U.S.C. § 1382(a). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." § 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec. Admin.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920).  "The claimant bears the burden of proof for steps one, two, and four [and the] Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2.  If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 416.920(a)(4).  The Court details the steps below.

*Step One*.  First, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. §§ 416.920(a)(4)(i) & 404.1520(a)(4)(i).  If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R.

3

§§ 416.920(b) & 404.1520(b).

*Step Two.*  Second, the claimant must show that his medically determinable impairment or a combination of his impairments was "severe" as of the date last insured ("DLI"). 20 C.F.R. §§ 416.920(a)(4)(ii) & 404.1520(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c) & 404.1520(c). An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See, e.g., McCrea v. Comm'r of Soc. Sec. Admin.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

*Step Three.*  Third, the claimant must show, based on medical evidence, that as of the DLI, his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(a)(4)(iii) & 404.1520(a)(4)(iii).

*Step Four.*  Fourth, the claimant must show that, as of the DLI, he lacked the RFC to perform his past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv) & 404.1520(a)(4)(iv); *see, e.g., Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If as of the DLI the claimant lacked the RFC to perform his past relevant work, the analysis proceeds. *See, e.g., Plummer v.*, 186 F.3d at 429.

*Step Five.*  Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC. 20 C.F.R.

4

§§ 416.920(a)(4)(v) & 404.1520(a)(4)(v).  If the Commissioner finds that the claimant is able to perform jobs that exist in significant numbers in the national economy, DIB will be denied.  *See id.*

### B. <u>Standard of Review</u>

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner."  *See Chandler v. Comm'r of Soc. Sec. Admin.*, 667 F.3d 356, 359 (3d Cir. 2011).  But "[t]he findings of the Commissioner . . . as to any fact, *if supported by substantial evidence*, shall be conclusive . . . ."  42 U.S.C. § 405(g) (emphasis added).  "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Chandler*, 667 F.3d at 359.  And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea*, 370 F.3d at 360.

As observed above, the Court is bound by the ALJ's findings of fact if supported by substantial evidence—"even if [the Court] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).  "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions."  *Izzo v. Comm'r of Soc. Sec. Admin.*, 186 F. App'x 280, 284 (3d Cir. 2006).  The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams*

*v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

However, "[s]ince . . . [an] ALJ cannot reject evidence for no reason or for the wrong reason . . . , an explanation from the ALJ [indicating] the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir. 1981); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."). And this is particularly important where the ALJ "has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter*, 642 F.2d at 706. Notably, that rule "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the rule] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120). Therefore, an "ALJ's failure to explain his implicit rejection of [probative and supportive] evidence or even to acknowledge its presence [amounts to] error." *Cotter*, 642 F.2d at 707 & n.10 (rejecting "ALJ's bare recital of the boilerplate language that he 'carefully considered all the testimony . . . and the exhibits,'" and finding that the ALJ erred when he did not mention, or explain his implicit rejection of, medical expert testimony that supported claimant's claim and contradicted the evidence accepted by the ALJ); *Kennedy v. Richardson*, 454 F.2d 376 (3d Cir. 1972) (vacating ALJ's

6

decision because it failed to afford an explanation why the ALJ rejected medical evidence that supported the claimant and that was inconsistent with the ALJ's finding).

### IV. Discussion

Sadowski assigns several errors to the ALJ's decision denying him DIB. (Pl. Mov. Br. at 10–12.)

First, Sadowski argues that the ALJ erred in not treating certain of his medical impairment as severe as step two. (*Id.* at 11.) But as the Commissioner points out, the ALJ found for Sadowski at step two. (Def. Opp. Br. at 6.) Specifically, the ALJ found that Sadowski has two severe impairments, degenerative disc disease and left cervical radiculopathy at C5-6. (R. at 17.) Sadowski takes issue with the ALJ's consideration of his obesity, anxiety, and depression because the ALJ found they were not severe. (Pl. Mov. Br. at 11.) However, any error in that regard at step two was harmless. *See Salles v. Comm'r of Soc. Sec. Admin.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005))). Indeed, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec. Admin.*, 347 F.3d 541, 546 (3d Cir. 2003). "As long as an ALJ finds at least one impairment to be severe, the ALJ considers all of a claimant's impairments in combination—severe and non-severe—at step three." *Figueroa v. Comm'r of Soc. Sec. Admin.*, No. 17-8239, 2018 WL 6918869, at *3 (D.N.J. Dec. 28, 2018).

7

Second, Sadowski argues that the ALJ erred in failing to take account of the "medical equivalence" of all his impairments at step three before finding that his impairments did not meet the Listings of Impairments in 20 C.F.R. § 404, Subpart P, Appendix 1—specifically, Listings 1.04 (spinal disorders), 12.04 (affective disorders), and 12.06 (anxiety disorders). (Pl. Mov. Br. at 14–15.) But with respect to Listing 1.04 and the impairments the ALJ found to be severe, the ALJ appears to have done what Sadowski says he did not: "The severity of [Sadowski's] physical impairments," the ALJ said, "*considered singly or in combination*, does not meet or medically equal the criteria of any impairment listed in 1.04." (R. at 20.) "An ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec. Admin.*, No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec. Admin.*, 268 F. App'x 186, 189 (3d Cir. 2008)). And with respect to Listings 12.04 and 12.06, although the ALJ did not explicitly mention Sadowski's depression or anxiety at step three, "an ALJ is not required to repetitively analyze each symptom at each step." *See Trzeciak v. Colvin*, No. CV 15-6333, 2016 WL 4769731, at *5 (D.N.J. Sept. 12, 2016). Instead, the ALJ must engage in an analysis sufficient to preserve meaningful review. *See id.* In light of the ALJ's analysis of Sadowski's depression and anxiety at step two, the Court perceives no reason to disturb the ALJ's findings. *See Granados*, 2014 WL 60054, at *9; *see also Williamson v. Berryhill*, No. 18-0117, 2019 WL 802046, at *2 (W.D. Pa. Feb. 21, 2019) ("[E]ven a

sparse step three analysis that fails to refer to all severe and non-severe impairments is not necessarily deficient.").

Third, Sadowski argues that at step four, the ALJ failed to provide a sufficient basis to credit and discredit certain medical opinions. (Pl. Mov. Br. at 11–12 & 26–37.) The Court agrees.

At step four, the ALJ found that although Sadowski lacked the RFC to perform his past relevant work as a bulk room operator and industrial cleaner, he had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (R. at 21, 27.) More specifically, the ALJ found that Sadowski "can lift ten pounds occasionally and less than ten pounds frequently"; can "carry ten pounds occasionally, and less than ten pounds"; can "sit[] for six hours, . . . stand for two hours, and . . . walk for two hours"; "can push and or pull ten pounds occasionally, and less than ten pounds"; "can frequently reach overhead to the left, and frequently reach overhead to the right"; "can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds"; "balance frequently, stoop occasionally, kneel occasionally, crouch occasionally, and never crawl"; and "can work at unprotected heights occasionally, moving mechanical parts occasionally, and in extreme cold occasionally." (*Id.*) Further, the ALJ found that Sadowski was not in need of the additional limitation of taking fifteen percent of his time off tasks and taking two absences from work per month. (*Id.*) In reaching that conclusion, the ALJ accorded "great weigh[t]" to two state agency medical consultants. (*Id.* at 26–27.) Both consultants opined, with one affirming the other, that Sadowski "can perform sedentary

9

range of work, occasionally lift ten pounds, frequently lift five pounds, stand and or walk for two hours, sit for about six hours, and . . .can perform frequent overhead reaching bilaterally." (*Id.* at 26–27.)

The ALJ relied on the two medical consultants in determining whether to credit or discredit Sadowski's treating physicians. For example, the ALJ discredited Dr. David Kang, who opined that Sadowski could sit only for less than six hours, because his opinion was inconsistent with the state agency medical consultants. (*Id.* at 26.) The ALJ credited Dr. Nathaniel Sutain, who opined that Sadowski could work forty hours per week, because his opinion was consistent with the state agency medical consultants. (*Id.* at 25–26.) The ALJ credited Dr. Adam Lipson to the extent he opined that Sadowski can perform sedentary work because that opinion was consistent with the opinion of Dr. Sutain, who was credited for his consistency with the medical consultants. (*Id.* at 26.) The ALJ discredited Dr. Michael Zaboski, who opined that Sadowski could sit only for four hours and needed to shift positions every fifteen minutes to remain comfortable, because his opinion was inconsistent Dr. Sutain, who (again) was credited for his consistency with the medical consultants. (*Id.* at 26.)

Thus, the ALJ's RFC assessment rested on the opinions of the state agency medical consultants. The ALJ offered two reasons for doing so: their opinions were "generally consistent with the evidence of record," and the medical consultants are "familiar with the Administrations' [*sic*] programs, rules and regulations." (*Id.* at 26–27.)

10

But neither reason is sufficient. The ALJ failed to cite record evidence that was consistent with the state agency medical consultants' opinions. (*Id.* at 26.) Although earlier in his discussion the ALJ noted their consistency with Dr. Sutain's opinion, the ALJ noted that consistency in arriving at the conclusion that *Dr. Sutain's opinion* was entitled to weight, not the other way around. (*Id.* at 25–26.) Moreover, the ALJ did not explain why the facts on which the agency consultants agreed with one another and Dr. Sutain must or should prevail over the consistency of Drs. Kang and Zaboski, both of whom opined that Sadowski could not perform sedentary work for six hours. The ALJ failed to explain why, despite the facts that Dr. Kang had been his doctor since 2011, Dr. Zaboski had been treating him since 2015, and both had examined him several times. (*Id.* at 26, 65, 408–11 & 419–96.)

As to the second basis for accepting these opinions and rejecting the treating physicians' opinions, although "[s]tate agent opinions merit significant consideration" for their expertise in Social Security disability programs, *Chandler*, 667 F.3d at 361, the ALJ ordinarily "must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all," *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993); *see also Louis v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 114, 119 (3d Cir. 2020) (citing *Mason*, 994 F.2d at 1067, for the proposition that "treating physicians' reports are entitled to greater weight than non-treating physicians' or a one-time examiner's"). "Generally, opinions from non-examining sources are not entitled to significant weight when contradicted by well-

supported opinions from treating physicians." *Rickabaugh v. Berryhill*, 271 F. Supp. 3d 721, 737 (D. Del. 2017) (first citing 20 C.F.R. § 404.1527(c); and then citing *Brownawell v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 352, 357 (3d Cir. 2008)). The Third Circuit has "consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician." *Brownawell*, 554 F.3d at 357 (quoting *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986)). Here, the ALJ did not offer a reason why he relied on the state agency medical consultants, who did not examine Sadowski (Pl. Mov. Br. at 36), over Sadowski's hands-on treating physicians, Drs. Kang and Zaboski. Instead, he focused on how the treating doctors' findings were inconsistent with what appears to have become his touchstone—agency opinions that reinforced each other without a sufficient anchor to the medical record. *See Hughes v. Astrue*, No. 10-1300, 2012 WL 364043, at *14 (W.D. Pa. Feb. 2, 2012) ("Such summary and ipse dixit reasoning fails to discharge the ALJ's duty to develop and examine the probative evidence of record.").

Moreover, in determining what weight to accord medical opinions, the ALJ must consider the several factors laid out under 20 C.F.R. § 404.1527(c). Those factors are the examining relationship; the treatment relationship, including the length of the treatment relationship and the frequency of examination and the nature and extent of the treatment relationship; supportability; consistency; specialization; and any other factor brought to the ALJ's attention. *See* § 404.1527(c)(1)–(6). Here, the ALJ did not

12

engage with those factors. Instead, he noted some without analyzing their relevance or how they impacted the quantum of evidence.

The government responds that the ALJ could, consistent with Third Circuit precedent, "discount a treating source opinion based on the underlying record." (Def. Opp. Br. at 19 (citing *Dunson v. Comm'r of Soc. Sec. Admin.*, 615 F. App'x 65, 69 (3d Cir. 2015) (affirming an ALJ's decision to reject the opinion of a treating physician because that opinion was inconsistent with his "own treatment notes"); *Crosson v. Comm'r of Soc. Sec. Admin.*, 94 F. App'x 58 (3d Cir. 2004) (affirming an ALJ's decision to discount the opinion of a treating physician "because the medical evidence was not fully supportive" of it)).) The Court does not suggest otherwise. In rejecting a treating source opinion, however, the ALJ must provide an adequate basis for doing so and not reach inconsistent findings without explanation so that the reviewing court can adequately "examine[] the ALJ's decision to discredit the treating physician to determine whether it is supported by substantial evidence." *Jiminez v. Comm'r of Soc. Sec. Admin.*, No. 19-12662, 2020 WL 5105232, at *5 (D.N.J. Aug. 28, 2020). Here, the ALJ found that Dr. Zaboski's opinion—that Sadowski could sit only for four hours and needed to shift positions every fifteen minutes to remain comfortable—was inconsistent with his own previous reporting that Sadowski was experiencing improvement in pain levels. (R. at 26.) But the ALJ did not explain why Dr. Zaboski's earlier opinion was more credible than his later one. (*Id.*) Instead, he merely noted those opinions were inconsistent and moved on. And it is not clear those conclusions were inconsistent. Both opinions were

offered at different times and at different stages of Sadowski's medical treatment. Moreover, if the ALJ thought that this purported inconsistency rendered Dr. Zaboski not credible, that conclusion is not obvious on the face of the record because the ALJ cited Dr. Zaboski's earlier opinion as an additional basis to credit Dr. Lipson. (*Id.*)

There is an additional inconsistency that bears mentioning. At step one, the ALJ determined that Sadowski did not engage in substantial gainful employment during the disability period, finding that a three-week period during which he worked constituted an "unsuccessful work attempt." (*Id.* at 17.) At the hearing, Sadowski testified that he was soon terminated from that employ because he "called out too much" due to his "pain" and the "type of work" he was doing. (*Id.* at 42.) The ALJ did not offer any basis to reject that testimony. But at step four, the ALJ accorded weight to Dr. Sutain, who opined that Sadowski could work forty hours per week while he was actually "going to work" during that three-week period. (*Id.* at 346.) It is unclear why Dr. Sutain is entitled to weight at step four and was ignored at step one. More importantly, the ALJ did not offer any explanation. *See Rodriguez v. Comm'r of Soc. Sec. Admin.*, No. 16-4706, 2017 WL 4227226, at *4 (D.N.J. Sept. 22, 2017) (remanding to the ALJ for failing to "provide any explanation for these seemingly inconsistent findings"); *Fletcher v. Colvin*, No. 12-0920, 2015 WL 1284391, at *4 (D. Del. Mar. 19, 2015) (explaining that an ALJ cannot "cherry-pick" evidence).

The Court is constrained to find that the reasons the ALJ gave for rejecting medical evidence of record are cursory and inconsistent, and remands with instructions

14

that the ALJ renders a new, fully reasoned step four determination that takes adequate account of the treating and examining relationship between Sadowski and each doctor offering a medical opinion, that analyzes each medical opinion under the § 404.1527(c) factors, and that provides reasons based on the record for crediting and discrediting medical opinions. The Third Circuit is consistent in holding that "access to the Commissioner's reasoning is [] essential to a meaningful court review." *Sanford v. Comm'r of Soc. Sec. Admin.*, No. 13-0366, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)); *see also Stockett v. Comm'r of Soc. Sec. Admin.*, 216 F. Supp. 3d 440, 456 (D.N.J. 2016) ("The Third Circuit 'requires the ALJ to set forth the reasons for his decision.'" (quoting *Burnett*, 220 F.3d at 123)).[1]

## V. Conclusion

For the foregoing reasons, the Court vacates and remands the decision of the Commissioner. An appropriate order will follow.

Dated: December 14, 2020

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

---

[1] Sadowski raises two other arguments challenging the ALJ's step-four analysis: (i) that the ALJ did not adequately account for Sadowski's subjective assessment of his pain, and (ii) that substantial evidence did not support the ALJ's RFC determination. (Pl. Mov. Br. at 36–37.) In light of the Court's remand, Sadowski remains free to press these arguments below.

15